IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BRADFORD COUNTY
BRANCH OF THE NAACP, *et al.*,

    *Plaintiffs*,

v.

CITY OF STARKE, FLORIDA, *et al.*,

    *Defendants*.

Case No. 86-5-CIV-J-12 MMH-LLL

**PARTIES' JOINT MOTION TO MODIFY JUDGMENT**

Defendants CITY OF STARKE, FLORIDA, and the INDIVIDUALLY NAMED MEMBERS OF THE STARKE CITY COMMISSION, Plaintiff Carolyn B. Spooner,[1] and Proposed Plaintiff[2] the FLORIDA STATE CONFERENCE OF BRANCHES AND YOUTH UNITS OF THE NAACP ("Florida NAACP" or "Branch"), move to modify the Order on Remedial Election Plan and Final Order on Remedial Election Plan in this case, dated April 26, 1989 and June 29, 1989, respectively, pursuant to Federal Rule of Civil Procedure 60(b)(6). A proposed order is attached hereto as Exhibit 1.

---

[1] Other class representatives Elizabeth Walker and Maurice J. White have passed away.
[2] The Florida NAACP's Motion to Substitute in place of its defunct branch, Plaintiff Bradford County Branch of the NAACP, is filed with the instant Motion.

1

## MEMORANDUM

### A. Background of the Case

1. On January 3, 1986, the Bradford County Branch of the NAACP, along with individual plaintiffs Elizabeth Walker, Jimmie L. Scott,[3] Carolyn B. Spooner, and Maurice J. White, filed this class action suit against the City of Starke, Florida, along with its mayor and the four members of its City Commission. (Compl., Doc. 1.) Plaintiffs alleged that the at-large election system for the City Commission then in place illegally excluded Black representation and participation, canceling out Black voting strength in violation of their rights protected by the Voting Rights Act. (*Id.* ¶ 1.)

2. This suit was one of a trio of voting rights cases challenging at-large elections in Bradford County, the other two being *Bradford County Branch of the NAACP v. Bradford County Commission*, No. 86-6-Civ-J-14, and *Bradford County Branch of the NAACP v. Bradford County School Board*, No. 84-4-Civ-J-12.

3. On May 6, 1986, upon motion by Plaintiffs, this Court certified a class "consisting of all black residents of Starke, Florida" in this case. (Class Certification Order 1, Doc. 19.)

4. The Court held a bench trial on liability in June 1988, before the late

---

[3] As he did not reside within the Starke city limits, Plaintiff Scott later voluntarily withdrew on July 8, 1986. (Order ¶ 1, Doc. 33.)

Judge Hodges. (Findings of Fact & Conclusions of Law 2, Doc. 119.) Following that trial, on February 27, 1989, the Court issued its Findings of Fact & Conclusions of Law, concluding that "Plaintiffs have proven their [Voting Rights Act] § 2 vote dilution claim" and "the at-large system used to elect the Starke City Commission operates in a manner which violates Section 2 of the Voting Rights Act." (*Id.* ¶ 66.)

5. On April 26, 1989, the Court issued its Order on Remedial Election Plan, by which "Defendants City of Starke, its City Commissioner[s], their successors and officers are enjoined from utilyzing [sic] city-wide at-large elections to elect members of the City of Starke City Commission. (Order ¶ 1, Doc. 122.) A copy of the Order on Remedial Election Plan is attached to the Parties' Joint Motion to Reopen the Court File as Exhibit 2.

6. On June 29, 1989, the Court issued its Final Order on Remedial Election Plan ("Final Order"), based on the joint submission of the parties. (Final Order 1–2, Doc. 124.) A copy of the Final Order is attached is attached to the Parties' Joint Motion to Reopen the Court File as Exhibit 3. The Court ordered Defendants to "conduct future elections for the Starke City Commission under a five single member district election system" and adopted the geographical boundaries of those five districts "in accordance with the district map attached hereto as Exhibit 'A' and incorporated herein by reference." (*Id.* 2 & Exh. A.) The Court further ordered that (a) "The Starke City Commission shall continue to be elected for a two year term of

3

office"; and (b) "[a]ll other terms and conditions of this Court's Order on Remedial Election Plan dated April 26, 1989 shall remain in full force and effect." (*Id.* 9.)

7. The Final Order remains in effect today and still binds Defendants and serves as an adjudication of the rights of class members.

### B. Subsequent Events and the 2021–22 Redistricting

8. Consistent with its obligations under the Order on Remedial Election Plan and Final Order, the City of Starke has conducted all its elections since 1989 using the district map ordered by this Court. Notwithstanding the City of Starke's consistency with its obligations under the foregoing Order as to single-member districts, by referendum election held on September 9, 1997, the electors of the City of Starke amended Article III, Section 10 of the Charter of the City of Starke to change the terms of service of elected city officials from two year terms to four year terms, and all elected city officials, including city commissioners, sworn into office after October 1, 1997 have been elected to serve a four year term.

9. Following the publication of the 2020 U.S. Census, the City analyzed its district map and determined that the City has experienced significant population shifts in the past decades, resulting in substantial inequality of population between the existing five districts.

10. With input and support from Plaintiffs, the City Commission developed a new district map, fulfilling its duty to adjust the district boundaries from time to

time when population changes necessitate, *see, e.g., Avery v. Midland Cnty.*, 390 U.S. 474 (1968); *Brown v. Thomson*, 462 U.S. 835 (1983), while also complying with the mandates of the Voting Rights Act.

11. This effort culminated in the City Commission's introduction of a redistricting ordinance, Ordinance No. 2022-08, on April 5, 2022. A copy of Ordinance No. 2022-08 is attached as Exhibit 2.

### C. Modification of Judgment

12. The Parties seek this Court's approval of the single-member district boundary plan as reflected in Ordinance No. 2022-08, and seek the Court to order implementation of the new plan for the 2022 and future elections.[4]

13. Additionally, the Parties seek to vacate the portion of the Final Order providing that "[t]he Starke City Commission shall continue to be elected for a two year term of office," which has been superseded by the City Charter amendment approved by the electors in 1997. (Final Order 9.)

14. The Parties are entitled to relief from this Court's Final Judgment and Amended Final Judgment pursuant to Federal Rule of Civil Procedure 60(b)(6). Rule 60(b)(6) provides that "[o]n motion and just terms, the court may relieve a party or

---

[4] The first elections held under the new plan would be the 2022 primary election on August 23 and the general election on November 8. The candidate qualifying period for the 2022 elections runs from June 13 to June 17.
    May 16 is the deadline to submit petitions, for candidates qualifying via the petition process rather than by paying the filing fee. *Id.* § 99.095(3).

its legal representative from a final judgment, order, or proceeding for . . . any other reason that justifies relief."

15. Without a modification of the Final Order in this case, Starke will not be able to comply with its mandatory duty to maintain single-member districts of relatively equal population, as the U.S. Constitution requires.

16. In addition to bringing the Commission into compliance with the "One Person, One Vote" requirements of federal and state law, the newly adopted redistricting plan also fully complies with the Voting Rights Act and the other requirements of this Court's Findings of Fact & Conclusions of Law and Final Order.[5] Namely, the new plan affords Black voters in Starke an equal opportunity to participate in the political process and elect representatives of their choice.

17. The relief the Parties request is similar to that granted in other Voting Rights Act cases, where local governments and plaintiffs have sought agreed-to updates to court-ordered redistricting maps following the release of new census figures. *See, e.g., Glenn v. Jackson Cnty.*, Case No. 5:84-CV-2110-RV (N.D. Fla. Mar. 15, 2022) (ECF 72); *Glenn v. Jackson Cnty. Sch. Bd.*, Case No. 5:84-CV-2109-RV (N.D. Fla. Feb. 16, 2022) (ECF 54); *Tallahassee Branch of the NAACP v. Leon Cnty.*, Case No. 4:83-CV-7480-WS (N.D. Fla. Dec. 20, 2021) (ECF 147, 150, 152)

---

[5] The Parties submit the Affidavit of Roger Q. Austin III, attached hereto as Exhibit 3, in support of this Motion.

(orders granting motions to modify judgment)

**WHEREFORE**, the Parties respectfully request that the Court grant their Joint Motion to Modify Judgment and enter an order approving the single-member district boundary adjustments as reflected in Ordinance No. 2022-08, ordering the City Commission to implement them for the 2022 and future elections, and vacating the portion of the Court's Final Order that requires the City Commission to be elected for a two year term of office.

Respectfully submitted this 19th day of April, 2022,

_/s/ Nicholas Warren_
Nicholas Warren (FBN 1019018)
**ACLU Foundation of Florida, Inc.**
336 East College Ave., Suite 203
Tallahassee, FL 32301
(786) 363-1769
nwarren@aclufl.org

Daniel B. Tilley (FBN 102882)
**ACLU Foundation of Florida, Inc.**
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-2714
dtilley@aclufl.org

*Counsel for the Class and the Florida NAACP*

_/s/ Clay Martin_
Clay Martin (FBN 126380)
**Folds Walker, LLC**
527 East University Ave.
Gainesville, FL 32601
(352) 372-1282
clay@foldswalker.com

*Counsel for Defendants*